(No. 5703.   June 20, 1932.)

AARON BOULTON, Respondent, v. JAMES TELFER, Appellant.

[12 Pac. (2d) 767.]

A. F. James, for Appellant.

J. H. Andersen and W. A. Brodhead, for Respondent.

BUDGE, J.—Respondent brings this action to recover upon two causes of action. In his first cause of action he alleges that he was in the possession and entitled to the exclusive possession of certain grazing lands situated in Blaine county, comprising 640 acres; that appellant on or about the eighteenth day of June, 1930, entered upon said land and established thereon a sheep camp and drove upon said land about 1,100 head of sheep, grazed and herded the same upon said land up to and including the twenty-ninth day of June, 1930, and thereby destroyed the grass and forage growing thereon to respondent's damage in the sum of $400; that the entry upon said land by appellant was

unlawful and without right, wilful and wantonly and knowingly done with the malicious intent to deprive respondent of the grasses and forage growing thereon, and that by reason of said wilful, wanton and unlawful trespass respondent seeks to recover exemplary damages in the sum of $2,000. In his second cause of action respondent alleges, among other things, that on or about the eighteenth day of June, 1930, and while respondent was in possession of said lands and was herding about 800 head of his sheep with their young lambs thereon the appellant unlawfully, knowingly and without right drove about 1,100 head of yearling ewe lambs upon said land and grazed and herded the same thereon, and without the consent of the respondent mixed said ewe yearling lambs with the ewes and young lambs of respondent, thereby injuring, destroying and maiming respondent's young lambs and ewes to his damage in the sum of $500.

Appellant answered respondent's first cause of action denying each and every allegation thereof except that appellant admitted that the lands described in respondent's complaint had some value for grazing purposes and further admitted that on or about the nineteenth or twentieth day of June, 1930, because of lack of knowledge as to the true government lines and by mistake he entered upon a small portion of the lands described in the complaint and established a sheep camp thereon where he remained for about one week, during a portion of which time his band of sheep, consisting of approximately 1,100 head, grazed on a small portion of said land, and further admitted that his entry upon said portion of said land was made without his having any title or interest therein. As to the second cause of action appellant's answer contains a general denial.

The cause was tried by the court and a jury. Verdict of the jury was for respondent, upon which judgment was entered, and from which judgment this appeal is taken.

There is no substantial dispute as to the facts which were proven substantially as alleged in the pleadings. It might be observed in this connection that one Pitman made a

stock-raising homestead entry upon 640 acres which was duly allowed by the United States land office on July 17, 1929; that on December 3, 1929, Pitman applied for an extension of time to establish his residence, which was granted on January 20, 1930, extending the time for establishing residence until July 17, 1930. In the fall of 1929, by verbal lease, Pitman leased the 640 acres covered by his stock-raising homestead entry to the respondent for the grazing season of 1930, for which he received the sum of $200. The trespass committed by appellant and complained of in respondent's first cause of action, and the damage alleged to be sustained as complained of in respondent's second cause of action, arose between on or about June 18 and June 29, 1930, or at a date prior to July 15, 1930, at which time Pitman voluntarily relinquished his entry.

Appellant's first assignment of error attacks the action of the trial court in refusing to grant his motion for nonsuit, upon the ground that respondent failed to prove that at the time appellant's sheep trespassed upon the land covered by the Pitman homestead entry, respondent was not in possession thereof. This is an action for injury to the possession, not to the freehold. It is well established that to maintain an action of trespass *quare clausum fregit,* i. e., for injury to the possession, the plaintiff must, at the time of the trespass, be in the actual or constructive possession of the land upon which the trespass was committed. (*Steltz v. Morgan,* 16 Ida. 368, 101 Pac. 1057, 28 L. R. A., N. S., 398; 26 R. C. L. 955, sec. 32. See note, 30 L. R. A., N. S., 243.) However, the evidence in behalf of respondent discloses that he had leased the land embraced in the homestead entry from Pitman, had herded his sheep thereon in the latter part of May, 1930, had inspected the land a week or two before the alleged trespass, and on June 18, 1930, put his sheep on the land at about the same time that appellant put his sheep thereon. Respondent had taken possession of the land under his lease and had exercised dominion over it prior to and at the time of the alleged trespass. He was entitled to possession by virtue

of his lease, while appellant was a mere tort-feasor. We think there was sufficient evidence of actual, if not constructive, possession by respondent, to withstand a motion for nonsuit.

In his second assignment of error, appellant complains of the giving of Instruction No. 3, reading as follows:

"The jury are instructed that the allowance of a homestead entry by the United States Land Office, gives the entryman possession as against the world, except the government of the United States; in other words, the allowance of the entry is title as against all persons except the United States."

This instruction correctly states the law as applied to the facts disclosed by the record. (50 C. J. 935, sec. 92; 22 R. C. L. 260, sec. 25; *Tiernan v. Miller & Leith,* 69 Neb. 764, 96 N. W. 661.)

In his third assignment of error appellant complains and assigns as error the giving of Instruction No. 4, which reads as follows:

"You are instructed that if you find from the evidence that on or about September 3rd, 1929, the plaintiff entered into an oral lease with James W. Pitman for leasing of the grazing on the land described as the James W. Pitman Grazing Homestead Entry, as shown by Plaintiff's Exhibit 'A,' for the grazing season of 1930, and you further find that the James W. Pitman homestead entry had been theretofore allowed by the United States Land Office, then from the commencement of the grazing season of 1930, as a matter of law, the plaintiff was in possession constructively and so remained in possession until the expiration of the term of the lease or until the entry was canceled; and during said period was entitled to the exclusive possession of the land embraced in said entry as against the defendant and all persons except the United States."

This assignment directly presents the question as to whether or not the making of the lease between the entryman Pitman and respondent was in violation of the spirit and purpose of U. S. C. A., Title 43, secs. 162 and 164. The

point sought to be made by appellant is that the making of the lease was a violation of the above sections, that the lease was illegal and void, and that no action could be predicated thereon for the recovery of damages by reason of the trespass alleged in the complaint. U. S. C. A., Title 43, sec. 162, provides:

"Any person applying to enter land under the preceding section shall first make and subscribe before the proper officer and file in the proper land office an affidavit . . . . that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, persons or corporation, and that he or she will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence and cultivation necessary to acquire title to the land applied for; that he or she is not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person, except himself or herself. . . . . "

U. S. C. A., Title 43, sec. 164, provides:

"No certificate shall be given or patent issued therefor until the expiration of three years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry, . . . . proves by himself and by two credible witnesses that he, she, or they have a habitable house upon the land and have actually resided upon and cultivated the same for the term of three years succeeding the time of filing

the affidavit and makes affidavit that no part of such land has been alienated, except as provided in section 174 of this division of this chapter, . . . . shall be entitled to a patent, as in other cases provided by law. . . . . "

In the regulations of the Department of the Interior relating to stock-raising homestead entries appears the following in connection with proofs on such entries:

"The entryman must show that he has actually used the land for raising stock and forage crops for not less than three years, and that he has made permanent improvements upon the land, having an aggregate value of not less than $1.25 per acre, and tending to increase the value of the land for stockraising purposes; . . . . "

As we construe the foregoing sections and regulations we are led to the conclusion that the lease involved was made, not in violation of the foregoing regulation but in compliance therewith, and did not constitute an alienation of the land embraced within the homestead entry. Alienation within the meaning and spirit of said sections must affect the title or be such a conveyance of such a qualified interest as might become absolute on patent passing from the United States. (*Short v. Praisewater*, 35 Ida. 691, 697, 208 Pac. 844.) In *Tiernan v. Miller & Leith, supra,* the court said:

"So long as the homestead entries made by the parties mentioned in appellant's petition remain uncanceled by the Land Department of the United States, these parties have a right to the possession of the lands embraced within their homestead entry, and they may lease such lands, or such portion of them as they desire, to third parties. The plaintiff, not having a prior right acquired under some law of the United States, cannot interfere with that possession, or dispute the right of the homestead claimant, except by proceedings in the Land Department, until title has passed from the United States, when the land and the right thereto may become the subject of inquiry in the courts."

In *Larson v. Weisbecker,* 1 Public Land Decisions, 409, construing a similar statute, it is said:

"The statute under consideration requires from a preemptor, in my opinion, in order to the defeat of his right of entry, a contract *by force of which* title to the land must vest in some other person than himself; and it must appear that *such was his intention* at the time of making it."

There is no evidence tending to show that it was the intention of the entryman, by making the lease with respondent, to vest title to the land in some other person than himself. At the time of the trespass Pitman's homestead entry had not been canceled and was in good standing. Pitman's tenant was entitled to the exclusive possession of the land embraced within the homestead entry. Appellant affirmatively alleged that his entry upon the land covered by the homestead entry was made without his having any title or interest therein.

Appellant could not excuse his liability for trespass upon the theory that he was ignorant of where the lines of the homestead entry were. As was said in *Hammond v. McMurray Brothers*, 49 Ida. 207, 215, 286 Pac. 603, 605:

"Apparently defendants acted upon the theory that because the lines of plaintiffs' lands were not marked out upon the ground, there was no obligation upon defendants to ascertain where they were. They were claiming a right to graze upon public lands, and it was incumbent upon them to ascertain where the lines of these lands were, and to remain within them."

Appellant contends that error was committed by the trial court in refusing to sustain an objection to the introduction of certain testimony on behalf of respondent as to whether or not respondent had or could obtain sufficient grazing land in addition to the Pitman land. Appellant insists that this evidence was prejudicially erroneous for the reason that by its admission the award of the jury was based upon what amounted to an incorrect and improper measure of damages, to wit: the rental value of the land plus the enhancement of such value caused by the fact that respondent did not have sufficient grazing for his sheep

without the grazing on the Pitman land. However, the court properly instructed the jury that the proper measure of damages in such case was the value of the grass and foliage consumed by defendant's sheep on the Pitman land, and the jury are presumed to have followed this instruction.

By his fifth assignment of error appellant complains that the court erred in refusing to sustain appellant's objection to certain testimony as to the loss of weight of the sheep. From the whole of the evidence as disclosed by the record, there is some evidence tending to show that loss in weight of the lambs was occasioned by the mixing of appellant's sheep with respondent's sheep and the injury to respondent's sheep and lambs was caused thereby. The instruction of the court upon this phase of the case was a sufficient guide to the jury in estimating the damages so caused. While it may not have been the best evidence it was the best evidence obtainable and was not improperly admitted, especially in view of the fact that respondent had been engaged in the sheep business for a considerable length of time, knew of the condition of the lambs before mixing and also their condition subsequently thereto, and by reason of his experience was in a position to express an opinion as to the amount of loss in weight, coupled with the further fact that it is also shown that at the date of the shipment they did not not come up to standard.

Under his last assignment of error appellant urges that the evidence is insufficient to support the verdict and judgment. Under Rule 40 it is the better practice to set out under the enumeration of errors the particulars wherein the evidence is insufficient, and this rule should be followed, which was not done in this case, the insufficiencies being set forth under the heading "Argument." However, we have carefully examined the evidence and have reached the conclusion that there is sufficient competent evidence to support the verdict and judgment, including evidence of damage by the trespass of appellant's sheep, that such

trespass was wilful and it was therefore within the province of the jury to assess exemplary damages.

Finding no reversible error the judgment is affirmed. Costs awarded to respondent.

Givens, Varian and Leeper, JJ., and Sutton, D. J., concur.