THE EDMOND PUBLIC WORKS AUTHORITY v. COVELL PARTNERS IN DEVELOPMENT



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:THE EDMOND PUBLIC WORKS AUTHORITY v. COVELL PARTNERS IN DEVELOPMENT

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 THE EDMOND PUBLIC WORKS AUTHORITY v. COVELL PARTNERS IN DEVELOPMENT
2020 OK CIV APP 38
Case Number: 117690; Comp. w/117691
Decided: 05/28/2020
Mandate Issued: 06/24/2020
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2020 OK CIV APP 38, __ P.3d __

 

 
THE EDMOND PUBLIC WORKS AUTHORITY, an Oklahoma Public Trust, Plaintiff/Appellant,
 
 and
 
 COVELL PARTNERS IN DEVELOPMENT, L.L.C., an Oklahoma Limited Liability Company, Plaintiff,
 
 v.
 
 LEONARD SULLIVAN, OKLAHOMA COUNTY ASSESSOR, Defendant/Appellee,
 
 and
 
 THE COUNTY BOARD OF EQUALIZATION, Defendant.
 

 
APPEAL FROM THE DISTRICT COURT OF
 
 OKLAHOMA COUNTY, OKLAHOMA
 
 
HONORABLE DON ANDREWS, TRIAL JUDGE
 

 
AFFIRMED
 

 
Leslie V. Batchelor, Bradley E. Davenport, CENTER FOR ECONOMIC DEVELOPMENT LAW, Oklahoma City, Oklahoma, for Plaintiff/Appellant
 
 
David W. Prater, DISTRICT ATTORNEY, Gretchen Crawford, ASSISTANT DISTRICT ATTORNEY, OKLAHOMA COUNTY, DISTRICT ATTORNEY'S OFFICE, Oklahoma City, Oklahoma, for Defendant/Appellee
 

 

 
KEITH RAPP, JUDGE:
 
 
 
¶1 The plaintiff, Edmond Public Works Authority (EPWA), appeals the trial court's grant of summary judgment to the defendant, Leonard Sullivan, Oklahoma County Assessor (Assessor). This appeal proceeds under the provisions of Okla.Sup.Ct.R. 1.36, 12 O.S. Supp. 2019, Ch. 15, app. 1. This is a companion appeal to Covell Partners in Development, L.L.C. v. Leonard Sullivan, Oklahoma County Assessor, Case No. 117,691.
 
 
BACKGROUND
 
 
¶2 The pertinent facts are not in dispute. EPWA is an Oklahoma public trust. EPWA owns a tract of land in Edmond. Covell Partners in Development, L.L.C. (Covell) and EPWA entered into a thirty-year lease agreement (Lease) whereby Covell leased the tract from EPWA effective April 25, 2016. The Lease is a petition and summary judgment exhibit. The Lease provisions and the fact that the real property covered by the Lease are tax exempt are not in dispute. After entering the Lease, Covell built a Hotel-Conference Center on the property covered by the Lease.
 
 
¶3 Covell agreed in the Lease to operate the Hotel-Conference Center. The Lease references additional agreements concerning development of the Hotel-Conference Center which are not in the Record.
 
 
¶4 In April 2018, Assessor designated the Hotel-Conference Center as personal property and placed that property on the tax rolls with an assessed value of $1,881,337.00. Assessor did not place the tract of land or the leasehold on the tax rolls because EPWA property is tax exempt by law.
 
 
¶5 Covell pursued and exhausted its administrative remedies in an unsuccessful challenge to the assessment. Covell and EPWA then filed this action in District Court. All parties filed motions for summary judgment and the basic facts are not disputed. The trial court sustained Assessor's motion and denied the joint motion of EPWA and Covell.
 
 
¶6 The issue is whether the Hotel-Conference Center are part of the real property owned by EPWA and thus tax exempt. The Hotel-Conference Center are obviously affixed to the real estate. Thus, citing statutory and case law authority, EPWA and Covell argued for the general rule that personal property affixed to real estate becomes part of the real estate. Citing other authority, as well as the Lease provisions, Assessor distinguished Plaintiffs' authority and maintained that the hotel and conference center facilities are personal, taxable property belonging to Covell.
 
 
¶7 The Lease contains the following provisions.
 
 
¶8 The Lease is titled Second Amended and Restated Hotel-Conference Center Ground Lease. (Emphasis added). The term "Ground Lease" is used in the recitals with reference to prior and other agreements.
 
 
¶9 The Lease definitions in Lease Paragraph 1 define "Building" to be "All improvements to the Leased Premises, including . . . the Hotel-Conference Center . . . together with all other structures, facilities, fixtures, appurtenances, equipment, sidewalks, pavement, landscaping, and all similar and related items and improvements located on, under and over the Leased Premises."
 
 
¶10 The "Leased Premises" are defined by the legal description of the real estate. In addition, the definition is: "The land upon which the Hotel-Conference Center are [sic] to be located."
 
 
¶11 The definitions paragraph references a $4.8 million-dollar loan from EPWA to Covell to develop the project together with a security agreement, mortgage and promissory note. These documents are not in the Record, but clearly pertain to the Hotel-Conference Center.
 
 
¶12 Paragraph 4.1 indicates that Covell may sell the "Building" on approval of EPWA. The word "Building" is defined in Lease Paragraph 1 and is set forth above.
 
 
¶13 Paragraph 5 provides that Covell is responsible to fully insure the Hotel-Conference Center. Also, Covell is obligated to improve the Leased Premises without reimbursement from EPWA. Paragraph 5.13 permits Covell to mortgage its leasehold interest.
 
 
¶14 Paragraph 5.15 provides: "Improvements. During the Term, ownership of the Building shall remain with Tenant." (Emphasis added).
 
 
¶15 Paragraph 5.17 gives Covell the option to purchase the "Leased Premises." The term "Leased Premises" is defined above as the land where the Hotel-Conference Center is to be located. Paragraph 6 provides that EPWA has a "put option" to require Covell to purchase the "Leased Premises." Paragraph 6 further provides that the exercise of the put option will not affect Covell's obligations under the loan documents mentioned above.
 
 
¶16 The termination clause in Paragraph 7.1.1 provides, in part: "Landlord . . . may terminate this Lease . . . Tenant will immediately surrender the Building and the Leased Premises."
 
 
¶17 The Lease contains a condemnation clause in Paragraph 9. This paragraph allocates condemnation proceeds and distinguishes "Leased Premises" from "Building." EPWA will receive the first money in an amount equal to the value of the "Leased Premises" taken. The balance goes to Covell.
 
 
¶18 After the trial court denied Plaintiffs' joint motion and sustained Assessor's motion, Plaintiffs filed separate appeals. This is EPWA's appeal.
 
 
STANDARD OF REVIEW
 
 
¶19 "Summary judgment is properly granted when there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law. When summary judgment involves only legal questions, the standard of review of a trial court's grant of summary judgment is de novo." South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Authority, 2008 OK 4, ¶ 10, 176 P.3d 1217, 1220.
 
 
¶20 "Issues of law are reviewable by a de novo standard. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,1996 OK 125 n.1, 932 P.2d 1100.
 
 
ANALYSIS AND REVIEW
 
 
A. Summary of Parties' Arguments
 
 
¶21 The argument presented by EPWA begins with the undisputed fact that the Hotel-Conference Center is affixed to the tax-exempt real estate. Therefore, by statute, for purposes of ad valorem taxes the Hotel-Conference Center is also tax exempt. EPWA relies upon two statutory provisions contained in the Oklahoma taxing statutes in Article 28 Ad Valorem Tax Code.
 
 
¶22 The first is 68 O.S.2011, §2806(A)(emphasis added), which provides:
 
 A. Real property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, and all rights and privileges thereto belonging or in any wise appertaining, such as permanent irrigation, or any other right or privilege that adds value to real property, and all mines, minerals, quarries and trees on or under the same, and all buildings, structures and improvements or other fixtures, including but not limited to improvements such as barns, bins or cattle pens, or other improvements or fixtures of whatsoever kind thereon, exclusive of such machinery and fixtures on the same as are, for the purpose of ad valorem taxation, defined as personal property.
 
 
The second is 68 O.S. Supp. 2019, §2807(2)(b) and (c)(emphasis added).
 
 Personal property, for the purpose of ad valorem taxation, shall be construed to include:
 
 . . .
 
 b. all improvements, including elevators and other structures, upon lands, the title to which is vested in any railway company or other corporation whose property is not subject to the same mode and rule of taxation as other property; and
 
 c. all improvements on leased lands that do not become a part of the realty.
 
 
¶23 EPWA cites Oklahoma Indus. Auth. v. Barnes, 1988 OK 98, 769 P.2d 115, a case dealing with the predecessor statutes. The issue in Barnes was whether a private leasehold estate in tax-exempt property may be taxed to the lessee. The Court held that the leasehold was not subject to taxation when the fee estate was exempt. The Court rejected the argument that failure to tax the leasehold created a de facto, unauthorized exemption. The issue and specific holding in Barnes do not apply here because Assessor did not assess Covell's lease with EPWA.
 
 
¶24 EPWA cites Keyes v. Penn Square Mall Limited Partnership, 1992 OK CIV APP 21, 827 P.2d 909. Keyes was the assessor. Penn Square leased the property from a third party. The property contained buildings and other improvements. The assessor proposed to tax the improvements as personal property, but the trial court ruled that the assessment must be as real property. The Court of Civil Appeals affirmed.
 
 
¶25 The Appellate Court rejected the assessor's argument that improvements to real property not owned by Penn Square are not subject to the same mode and rule of taxation and thus should be taxed as personal property. The Court looked to the statutory definition of real property, which included buildings and improvements on the real property.
 
 
¶26 However, it is significant that, when rejecting the Penn Square assessor's argument, the Court distinguished the case of Central Coal & Lumber Co. v. Board of Equalization, 1918 OK 329, 173 P. 442. Central Coal, a private company, had leased land from Native American Tribes and the land was tax exempt. Central Coal built houses on the property and the houses were determined to be personal property. The assessment was sustained because the Native American lands were not subject to the same mode and rule of taxation as the private property owned by Central Coal. The record in this case demonstrated that Central Coal had charge of the houses and exercised supervision and ownership over them and that it rented the houses to its employees and collected the rents. Thus, the houses were personal property.
 
 
¶27 Here, Assessor argues that the mode and rule of taxation distinction applies. Thus, EPWA is a tax-exempt entity, as were the Native American Tribes. Covell is a private entity just as was Central Coal. Therefore, Assessor concludes that the mode and rule of taxation are different for Covell and EPWA. The Historical and Statutory Notes of Title 68 O.S. Supp. 2019, § 2807(2) provide that Laws 2006 rewrote Paragraph 2, but retained the "mode and rule of taxation" language.
 
 
¶28 Next are the parties' arguments regarding the legal effect of the Lease terms summarized above. Assessor maintains that the Lease terms separate ownership of the real estate from the Hotel-Conference Center improvements and buildings. The Lease terms reinforce the argument that the Hotel-Conference Center is both not part of the realty and also not the subject of the same mode and rule of taxation.
 
 
¶29 EPWA cites Davis v. Taylor, 1944 OK 294, 153 P.2d 231. The record in Davis provided an ownership history. The land had been owned by a private corporation, Oklahoma Coal Company. That company built several buildings, including storage and residences. In 1932, Taylor bought a storeroom building and made it his residence. In 1939, Theodore Davis acquired all of the land from the County after the land was sold for delinquent taxes. He then conveyed the land to the defendant, Boyd Davis.
 
 
¶30 Boyd Davis obtained possession from Taylor through forcible entry and detainer. The subject building had become dilapidated and Taylor asked to remove the lumber of the storeroom where he had resided. Davis denied the request and removed the structure. Taylor sued for conversion and prevailed at trial.
 
 
¶31 The Oklahoma Supreme Court reversed. On appeal, Davis successfully argued that the building was subject to taxation as real property and therefore ownership passed to him by virtue of the tax deed and subsequent conveyance. The Court quoted a prior version of Section 2806(A) providing that real property included buildings. The Court then added that a contrary agreement between landlord and tenant does not affect the right of the taxing authority. Thus here, EPWA maintains that the Lease provisions, including the ownership provision, do not override the statute.
 
 
¶32 The Davis Opinion does not recite that, in fact, there was an agreement between Taylor and the Oklahoma Coal Company. Also, the Opinion does not recite any specifics of any agreement. On its facts, Davis stands for the proposition that when a property owner places buildings on the owner's real property the buildings become taxable as part of the real estate. The case does not serve as precedent for the situation here, where the private entity owner of the buildings placed the buildings on the property of the public entity owner of the real estate and the public entity owner of the real estate agrees that the private entity owner of the buildings will continue to be the owner of the buildings.
 
 
B. Decision
 
 
¶33 This case involves a specific statute involving the ad valorem tax code and its definitions of real and personal property. Thus, while these definitions might have antecedents in general property and fixture statutes and common law, the definitions in the statute apply for purposes of the ad valorem tax code. Moreover, the ad valorem tax code is a set of special, or specific, statutes and thus control over any general statute. Multiple Injury Trust Fund v. Coburn, 2016 OK 120, 386 P.3d 628.
 
 
¶34 Because this is a claim for exemption, the statutes are construed against the claim for exemption. Phillips Petroleum Co. v. Oklahoma Tax Comm'n, 1975 OK 146, 542 P.2d 1303. A provision for an exemption is strictly construed against the party claiming the exemption. Austin, Nichols & Co. v. Oklahoma Co. Bd. of Tax-Roll Corrections, 1978 OK 65, 578 P.2d 1200.
 
 
¶35 Next, the Legislature does not have the power to exempt private property from taxation unless the State Constitution so permits. Okla. Const., Art 5, §§ 46, 50. The Legislature also may not enlarge exemptions recognized in the Constitution. Home-Stake Production Co. v. Board of Equalization, 1966 OK 115, 416 P.2d 917.
 
 
¶36 The EPWA-Covell facts are not in dispute. The real estate owned by EPWA is tax exempt, as is the Leasehold estate. EPWA owns the real estate. The Hotel-Conference Center is a "building" and an "improvement" according to the Lease. The Hotel-Conference Center is physically attached to EPWA's real estate. Covell owns the Hotel-Conference Center according to the express terms of the Lease. On its own, Covell is not entitled to an ad valorem tax exemption and its property, for such tax purposes, is subject to a different mode and rule of taxation than the property of EPWA.
 
 
¶37 Thus, in order for Covell to have a tax exemption, this Court would have to conclude that the Hotel-Conference Center is not only affixed to EPWA's property but is also owned by EPWA. This Court interprets 68 O.S. Supp. 2019, §2807(2)(b) to include separate owners and to apply here. The Central Coal & Lumber Co. case is an example. Title 68 O.S. Supp. 2019, §2807(2)(c) presents the case where ownership is not divided when the improvements are affixed to the property. See Davis v. Taylor as an example.
 
 
¶38 In the absence of ownership of the Hotel-Conference Center by EPWA, the result would be the grant of a tax exemption to a property owner, Covell, that is not entitled to such exemption on its own. Moreover, the cited provisions of the ad valorem tax code would have to be construed to mean that the Legislature granted an exemption to an unqualified entity and unqualified property, which it cannot do.
 
 
CONCLUSION
 
 
¶39 Therefore, the trial court did not err by denying summary judgment to EPWA and granting summary judgment to Assessor. The judgment of the trial court is affirmed.
 
 
¶40 AFFIRMED.
 
 

 
BARNES, P.J., and FISCHER, J., concur.
 
 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 21, 827 P.2d 909, 63 OBJ 1146, Keyes v. Penn Square Mall Ltd. Partnership
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 98, 769 P.2d 115, 59 OBJ 2457, Oklahoma Industries Authority v. Barnes
Discussed
 1918 OK 329, 173 P. 442, 70 Okla. 131, CENTRAL COAL & LUMBER CO. v. BOARD OF EQUALIZATION OF LE FLORE COUNTY
Discussed
 1966 OK 115, 416 P.2d 917, HOME-STAKE PRODUCTION CO. v. BD. OF EQUALIZATION
Discussed
 2008 OK 4, 176 P.3d 1217, SOUTH TULSA CITIZENS COALITION L.L.C. v. ARKANSAS RIVER BRIDGE AUTHORITY
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1975 OK 146, 542 P.2d 1303, PHILLIPS PETROLEUM CO. v. OKLAHOMA TAX COM'N
Discussed
 1978 OK 65, 578 P.2d 1200, AUSTIN, NICHOLS & CO. v. OKLAHOMA COUNTY BD. OF TAX-ROLL CORRECTIONS
Discussed
 2016 OK 120, 386 P.3d 628, MULTIPLE INJURY TRUST FUND v. COBURN; MULTIPLE INJURY TRUST FUND v. STURDIVANT; MULTIPLE INJURY TRUST FUND v. CROSSLIN; MULTIPLE INJURY TRUST FUND v. WILLIAMS
Discussed
 1944 OK 294, 153 P.2d 231, 194 Okla. 565, DAVIS v. TAYLOR
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 2806, Construction of Real Property
Cited
 68 O.S. 2807, Construction of Personal Property
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA